1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

9

10    MICHAEL MUTHEE MUNYWE,

11              Plaintiff,                           CASE NO. 3:21-cv-05431-BJR-JRC

12        v.                                         ORDER FOR AMENDED
                                                     COMPLAINT
13    SCOTT R. PETERS, *et al.*,

14              Defendants.

15

16        Plaintiff filed a complaint under 42 U.S.C. § 1983. Dkt. 7. As discussed below, because

17   plaintiff's complaint is deficient in several respects, this Court orders him to file an amended

18   complaint.

19        Plaintiff was convicted in state court based on allegations that he forced a minor to

20   perform oral sex on him. Plaintiff's complaint contains two main allegations: (1) certain

21   defendants conspired to falsify evidence and suppress exculpatory DNA evidence in violation of

22   his constitutional rights; and (2) other defendants violated his constitutional rights when they

23

24

1   conducted a cross-gender search of plaintiff while he was nude. Plaintiff seeks declaratory relief,

2   injunctive relief, and damages.

3          Although certain defendants have filed motions to dismiss, because these motions do not

4   involve all defendants and all claims, this Court has determined that a more appropriate way to

5   address these issues is by screening the entire complaint pursuant to 28 U.S.C. § 1915A(a) and §

6   1915(e).

7          Pursuant to this screening, the Court concludes that because plaintiff's direct criminal

8   appeal is pending, this Court must abstain from deciding his requests for declaratory and

9   injunctive relief. Furthermore, plaintiff's allegation that certain defendants fabricated evidence

10  and suppressed exculpatory DNA evidence necessarily imply that his criminal conviction is

11  invalid. Therefore, because plaintiff has not shown that his criminal conviction has been called

12  into doubt, he cannot raise these allegations in this § 1983 proceeding.

13         By contrast, plaintiff's allegations plausibly suggest that the cross-gender team violated

14  his rights under the Fourth Amendment when it they collected evidence from him while he was

15  nude. Plaintiff's allegations also plausibly suggest that this team violated the privilege against

16  self-incrimination and substantive due process when they allegedly gratuitously questioned him

17  while he was nude. Therefore, these § 1983 claims are properly pled and may proceed forward

18  when plaintiff files his amended complaint. Plaintiff's remaining allegations lack any plausible

19  factual support and, hence, fail to suggest any constitutional violations.

20  **I.      Background**

21         Following a jury trial, plaintiff was convicted of a felony and sentenced in Pierce County

22  based on allegations that he forced a minor to perform oral sex on him. *See* Dkt. 7 at 3, 13;

23  https://dw.courts.wa.gov/?fa=home.casesearch&terms=accept&flashform=0&tab=sup (searching

24

1  Superior Courts under Select Court Level, Search by case number under Select Search type,

2  Pierce County Superior Court under Court Name, and 18-1-04633-7 under Case Number;

3  clicking Available link in first result and Judgment Rec # 209019586 for Michael Muthee

4  Munywe; considering Docket Dates February 6, 2020 and March 27, 2020); *see also U.S. ex rel.*

5  *Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244 (9th Cir. 1992) (federal

6  courts "may take notice of proceedings in other courts, both within and without the federal

7  judicial system, if those proceedings have a direct relation to matters at issue." (collecting

8  cases)). Plaintiff's direct appeal of his conviction is pending. *See*

9  https://dw.courts.wa.gov/?fa=home.casesearch&terms=accept&flashform=0&tab=sup (searching

10  Appellate Courts under Select Court Level, Search by name under Select Search Type, Court of

11  Appeals Division II under Court Name, 01/01/2020 under Year Filed In/After, Michael Munywe

12  under First Name and Last Name; clicking link for Case No. 546817).

13      Plaintiff sues these defendants: (1) Scott R. Peters, a prosecutor; (2) Julie Dier, a

14  detective; (3) Malerie Ramos, a crime scene technician; (4) William Muse, a detective; (5) the

15  City of Tacoma; (6) Jennifer Hayden, a DNA analyst; and (7) Washington State Patrol Crime

16  Laboratory ("WSPCL"). Dkt. 7 at 4–5. Peter J. Helmberger of the Pierce County Prosecuting

17  Attorney's Office represents defendant Peters. Jennifer J. Taylor of the Tacoma City Attorney's

18  Office represents defendants Dier, Ramos, Muse, and City of Tacoma ("Tacoma defendants").

19  William Chandra Schwarz represents defendants Hayden and WSPCL ("State defendants").

20      The following allegations come from the complaint. This Court assumes their truth to

21  screen the complaint.

22      In count I, plaintiff alleges that defendants Peters and Hayden violated due process and

23  equal protection by conspiring to suppress "clearly exculpatory DNA evidence" that included

24

1   "spit cup contents and its two DNA samples, fingernails and fingers DNA evidence[,] and

2   alleged scene evidence that was sidewalk DNA swabs." *Id.* at 7–8.

3        In count II, plaintiff alleges that defendant Peters violated due process and equal

4   protection by forging, fabricating, and falsely creating "documents [defendant Peters] purported

5   to be phone contacts exchanges [sic] between a complainant and plaintiff." *Id.* at 9.

6        In count III, plaintiff alleges that defendant Peters violated his rights to a speedy trial, due

7   process, and equal protection. *Id.* at 10. In support, he alleges that defendant Peters

8   "continuously" told the trial court that he was awaiting "delivery of DNA results" from WSPCL

9   even though "he already had possession of the results and knew very well that he was giving

10  false information." *Id.* at 11. As a result, plaintiff alleges that the trial court granted "over twenty

11  . . . continuances over a period of 16 months." *Id.* Plaintiff adds that defendants Peters and

12  Hayden conspired to "not bother doing serology testing on any evidence submitted for testing."

13  *Id.*

14       In count IV, plaintiff alleges that defendant Hayden violated due process and equal

15  protection. *Id.* at 13. In support, he alleges that defendant Hayden "knew very well that she was

16  working on crucial evidence for oral sex allegations" but "did an incomplete job" by not testing

17  the "presence of body fluids like saliva and seminal fluids." *Id.* Further, plaintiff alleges that

18  defendant Hayden withheld and suppressed "exculpatory evidence" that "included samples of

19  fingernails' swabs and other DNA swabs of all ten fingers." *Id.* at 14. Additionally, plaintiff

20  alleges that defendant Hayden decided not to test and "discarded" "spit cup contents" and/or

21  "two sets of evidence from the complainant and at the alleged scene of [the] crime" because she

22  suspected that this evidence was favorable to plaintiff. *Id.* at 14–15.

23

24

1   In count V, plaintiff alleges that, on November 22, 2018, defendants Dier, Ramos, and

2   Muse violated the First Amendment and equal protection and used excessive force on him. *Id.* at

3   16–17. In support, plaintiff alleges that they disrespectfully exposed his "nudity," "especially his

4   genitals," while taking photographs of him and collecting evidence from him following his

5   arrest. *See id.* Specifically, plaintiff alleges that these defendants "commanded" him to "stand by

6   the wall," "remove that jacket," "lift up [his] shirt," "remove those pants," "remove [his]

7   underwear," "drop it down," "split those legs apart," and "lift [his] testicles." *Id.* at 17. Further,

8   plaintiff alleges that defendant Ramos "took a series of unnecessary photographs" because "there

9   was another video camera that was recording the whole episode." *Id.* Additionally, plaintiff

10   alleges that these defendants so acted "for their personal enjoyment and fun." *Id.* Plaintiff admits

11   that defendant Ramos "had a lawful task in evidence collection." *Id.* However, he alleges that

12   "other male technicians . . . [could] have performed the task." *Id.* Plaintiff adds that being

13   interrogated while nude and embarrassed "compel[led] him to a confession." *See id.*

14   Plaintiff also alleges that he is of "East African Bantu tradition" and that defendants

15   "should have known that people of different origins, traditions[,] and religions may observe

16   religiously-based nudity taboos." *Id.* at 18. Moreover, plaintiff alleges that the area where these

17   defendants conducted the search was contaminated. *Id.* at 17.

18   In count VI, plaintiff alleges that defendant WSPCL's "policies, customs, and norms"

19   caused defendant Hayden to improperly test and analyze DNA evidence in his case. *See id.* at 19.

20   In count VII, plaintiff contends that defendant City of Tacoma's "policies, customs[,] and

21   norms" caused defendants Dier, Ramos, and Muse to violate plaintiff's constitutional rights

22   during their search alleged in count V. *See id.* at 21.

23

24

1    Plaintiff seeks damages, injunctive, and declaratory relief. *See id.* at 22–24. Regarding

2    defendant Peters, plaintiff seeks: (1) suspension of his law license; (2) an investigation; and (3)

3    an order enjoining Peters from involvement in his postconviction cases or any future cases

4    involving plaintiff. *Id.* at 22–23. Regarding defendant Hayden, plaintiff seeks: (1) an order

5    requiring the "destruction and nullification" of her "DNA work product" and precluding the use

6    of her "DNA results" in plaintiff's future postconviction litigation; and (2) an order prohibiting

7    Hayden from doing "future DNA testings" in any case involving plaintiff. *Id.* at 23. Likewise,

8    regarding defendant WSPCL, plaintiff seeks an order prohibiting it from doing "future DNA

9    testings" in any case involving plaintiff. *Id.* at 24. Furthermore, plaintiff seeks: (1) nominal

10   damages from all defendants; and (2) punitive damages from defendants Hayden, Muse, Dier,

11   City of Tacoma, and WSPCL. *Id.* at 22–24.

12    On June 23, 2021, this Court ordered service of the same. *See* Dkt. 9 at 1. On August 6,

13   2021, the State defendants answered. Dkt. 26. On August 13, 2021, before the remaining

14   defendants answered or otherwise responded, this Court entered a scheduling order that set a

15   disposition motions deadline of February 10, 2022. Dkt. 28. On August 23, 2021, the Tacoma

16   defendants and defendant Peters filed motions to dismiss. Dkts. 29, 31. Plaintiff filed lengthy

17   responses to the motions to dismiss. Dkts. 40–41. Defendants filed replies. Dkts. 45–46.

18    Under the Prison Litigation Reform Act ("PLRA"), this Court is required to screen

19   complaints brought by prisoners seeking relief against a governmental entity or officer or

20   employee of a governmental entity. 28 U.S.C. § 1915A(a); *O'Neal v. Price*, 531 F.3d 1146, 1152

21   (9th Cir. 2008). This Court must "dismiss the complaint, or any portion of the complaint, if the

22   complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted;

23

24

1    or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §

2    1915A(b).

3           Likewise, because plaintiff is proceeding *in forma pauperis* ("IFP"), Dkt. 6, this Court

4    must screen his amended complaint under § 1915(e). *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th

5    Cir. 2000) (en banc). Under § 1915(e)(2)(B), a district court must dismiss a prisoner's IFP case

6    at any time if it determines that the case is (i) frivolous or malicious; (ii) fails to state a claim on

7    which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune

8    from such relief. *O'Neal*, 531 F.3d at 1153 (citation and internal quotation marks omitted).

9           Section 1915A and § 1915(e) both allow district courts to screen a complaint at any time

10   during a case. *See* 28 U.S.C. § 1915A ("The court shall review . . . *as soon as practicable after*

11   *docketing*[] a complaint . . . ." (emphasis added)); 28 U.S.C. § 1915(e)(2) ("[T]he court shall

12   dismiss the case at any time . . . ."). The district court may screen a complaint under these

13   provisions even if it has entered a scheduling order, *Blackwell v. Pizzola*, No. CIV S-09-0535,

14   2010 WL 4705183, at *5 (E.D. Cal. Nov. 12, 2010) (citing *Byrd v. Maricopa Cty. Sheriff's*

15   *Dep't*, 565 F.3d 1205, 1212 (9th Cir. 2009)), or if a defendant has filed a motion to dismiss,

16   *Lopez*, 203 F.3d at 1126 n.6, or moved for summary judgment, *Byrd*, 565 F.3d at 1212, *judgment*

17   *vacated on other grounds*, 629 F.3d 1135 (9th Cir. 2011).

18          Here, screening the complaint promotes clarity and judicial economy. Therefore, even

19   though defendant Peters and the Tacoma defendants have moved to dismiss certain claims, this

20   Court concludes that screening the entire complaint at this stage is a more appropriate way to

21   address these issues.

22          The standard for determining whether a plaintiff has failed to state a claim under §

23   1915A(b)(1) and § 1915(e)(2)(B)(ii) is the same as Federal Rule of Civil Procedure 12(b)(6)'s

24

1    standard for failure to state a claim. *Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012);

2    *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012). So, under § 1915A(b)(1) and §

3    1915(e)(2)(B)(ii), the court may dismiss a complaint that fails "to state a claim to relief that is

4    plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial

5    plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

6    inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S.

7    662, 678 (2009).

8         "In determining whether a complaint states a claim, all allegations of material fact are

9    taken as true and construed in the light most favorable to the plaintiff." *Barnett v. Centoni*, 31

10   F.3d 813, 816 (9th Cir. 1994) (per curiam) (citation omitted). "Dismissal is proper only if it is

11   clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him

12   to relief." *Watison*, 668 F.3d at 1112 (citation omitted). There is "an obligation where the

13   petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to

14   afford the petitioner the benefit of any doubt." *Byrd v. Phoenix Police Dep't*, 885 F.3d 639, 642

15   (9th Cir. 2018) (per curiam) (citation omitted). However, while the court can liberally construe a

16   plaintiff's complaint, it cannot supply an essential fact an inmate has failed to plead. *Pena v.*

17   *Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (per curiam) (citation omitted).

18   **II.    Discussion**

19        A.    *Younger*

20        In *Younger*, "the Supreme Court held that a federal court may not interfere with a pending

21   state criminal prosecution absent extraordinary circumstances." *Logan v. U.S. Bank Nat'l Ass'n*,

22   722 F.3d 1163, 1167 (9th Cir. 2013). "Specifically, *Younger* abstention is appropriate when: (1)

23   there is an ongoing state judicial proceeding; (2) the proceeding implicates important state

24

interests; (3) there is an adequate opportunity in the state proceedings to raise constitutional challenges; and (4) the requested relief seeks to enjoin or has the practical effect of enjoining the ongoing state judicial proceeding." *Arevalo v. Hennessy*, 882 F.3d 763, 765 (9th Cir. 2018) (alterations adopted) (citation and internal quotation marks omitted). "*Younger* principles [also] apply to actions . . . for . . . declaratory relief." *Gilbertson v. Albright*, 381 F.3d 965, 968 (9th Cir. 2004) (en banc).

"However, even if *Younger* abstention is appropriate, federal courts do not invoke it if there is a showing of bad faith, harassment, or some other extraordinary circumstance that would make abstention inappropriate." *Arevalo*, 882 F.3d at 765–66 (citation and internal quotation marks omitted). "In the *Younger* abstention context, bad faith generally means that a prosecution has been brought without a reasonable expectation of obtaining a valid conviction." *Baffert v. California Horse Racing Bd.*, 332 F.3d 613, 621 (9th Cir. 2003) (citation and internal quotation marks omitted). Bad faith may also mean that "the state tribunal is incompetent by reason of bias," though "one who alleges bias must overcome a presumption of honesty and integrity in those serving as adjudicators." *Hirsh v. Justs. of Supreme Ct. of State of Cal.*, 67 F.3d 708, 713 (9th Cir. 1995) (per curiam) (citation and internal quotation marks omitted). These exceptions are "narrow." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975). "[A] plaintiff who seeks to head off *Younger* abstention bears the burden of establishing that one of the exceptions applies." *Diamond "D" Const. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citation omitted).

"For *Younger* purposes, the State's trial-and-appeals process is treated as a unitary system." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 369 (1989). Courts may *sua sponte* consider the propriety of a *Younger* abstention. *San Remo Hotel v. City & Cty. of San Francisco*, 145 F.3d 1095, 1103 (9th Cir. 1998); *see Younger*, 401 U.S. at 40–41.

1   Here, based primarily on the allegation that defendants Peters and Hayden conspired to

2   fabricate evidence and suppress exculpatory DNA evidence, plaintiff seeks unspecified declaratory

3   and sweeping injunctive relief. *See* Dkt. 7 at 22–24. This injunctive relief includes: (1) an

4   investigation of defendant Peters and suspension of his law license; and (2) an order requiring the

5   "destruction and nullification" of defendant Hayden's "DNA work product" and precluding her

6   "DNA results" from use in plaintiff's future postconviction litigation. *See id.*

7   *Younger* applies to these claims for declaratory and injunctive relief. Plaintiff's direct

8   criminal appeal is pending and those proceedings implicate important state interests. *See Kelly v.*

9   *Robinson*, 479 U.S. 36, 49 (1986) (citation omitted). Plaintiff can raise his constitutional claims on

10  direct appeal or in a postconviction motion. *See, e.g.*, *Bean v. Matteucci*, 986 F.3d 1128. 1134 (9th

11  Cir. 2021) ("[T]he speedy trial defense primarily protects the integrity of the trial itself and, like

12  most trial rights, can be vindicated through reversal of the improperly-obtained conviction."

13  (citation and internal quotation marks omitted)); *In re Stenson*, 174 Wash. 2d 474, 476–77 (2012)

14  (deciding claim under *Brady v. Maryland*, 373 U.S. 83 (1963) raised in a personal restraint

15  petition). Furthermore, the broad injunctive relief plaintiff seeks would have the practical effect of

16  enjoining his direct criminal appeal. As noted, plaintiff alleges that defendants Peters and Hayden

17  conspired to fabricate evidence and suppress exculpatory DNA evidence. Based on their alleged §

18  1983 violations, plaintiff seeks an investigation of defendant Peters and suspension of his law

19  license, as well as "destruction and nullification" of defendant Hayden's "DNA work product."

20  Granting such relief would cast such doubt on the validity of plaintiff's conviction as to effectively

21  enjoin his prosecution.

22   Plaintiff concedes that defendant Ramos "had a lawful task in evidence collection" based

23  on the allegations of forced oral sex. *See* Dkt. 7 at 13, 17. Furthermore, judicial records show that

1   a jury convicted plaintiff after a jury trial. Plaintiff's conclusory allegations that defendants were

2   biased against him because of his ethnicity and nationality cannot overcome the presumption of

3   regularity that attaches to his conviction. *See Hirsh*, 67 F.3d at 713. Therefore, plaintiff's

4   allegations do not plausibly suggest that his prosecution was brought in bad faith.

5           In sum, *Younger* requires this Court to abstain from deciding many of the claims for relief

6   at issue.

7           B.      *Heck*

8           In addition, many of the claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

9   "[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, . . . , a

10  § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal,

11  expunged by executive order, declared invalid by a state tribunal authorized to make such

12  determination, or called into question by a federal court's issuance of a writ of habeas corpus."

13  *Id.* at 477, 486–87. Furthermore, "a state prisoner's § 1983 action is barred (absent prior

14  invalidation)—no matter the relief sought (damages or *equitable relief*), no matter the target of

15  the prisoner's suit . . . *if* success in that action would necessarily demonstrate the invalidity of

16  confinement or its duration." *Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (first emphasis

17  added).

18          Here, *Heck* bars the allegations in counts I, II, III, IV, and VI, the claims plaintiff bases

19  on them, and his related requests for relief. Again, the complaint's primary allegation is that

20  defendants Peters and Hayden conspired to fabricate evidence and suppress exculpatory DNA

21  evidence. Establishing these allegations would necessarily invalidate plaintiff's conviction. *See,*

22  *e.g.*, *Skinner v. Switzer*, 562 U.S. 521, 536 (2011) ("[A] *Brady* claim, when successful

23  postconviction, necessarily yields evidence undermining a conviction[.]"); *Heck*, 512 U.S. at

24

479, 486–87 (enunciating *Heck* rule where the plaintiff alleged that defendants had "knowingly

destroyed evidence which was exculpatory in nature and could have proved petitioner's

innocence . . . and caused an illegal and unlawful voice identification procedure to be used at [the

plaintiff's] trial" (internal quotation marks omitted)); *Alwan v. Dembe*, 603 F. App'x 68, 69 (3d

Cir. 2015) (per curiam) (plaintiff's "claims—that he was maliciously prosecuted, falsely

convicted on fabricated evidence, denied a fair and speedy trial, and denied access to exculpatory

material—are barred by [*Heck*]" (citation omitted)); *Guerrero v. Gates*, 442 F.3d 697, 703 (9th

Cir. 2006) (*Heck* barred claims of "[w]rongful arrest, malicious prosecution, and a conspiracy

among Los Angeles officials to bring false charges"); *Abella v. Rubino*, 63 F.3d 1063, 1065

(11th Cir. 1995) (per curiam) (*Heck* bars "damages claims [that] rest on the contention that the

defendants unconstitutionally conspired to convict [the plaintiff] of crimes he did not commit").

In sum, *Heck* bars the allegations in counts I, II, III, IV, and VI and the related claims and

requests for relief.

C.    Defendant WSPLC

Defendant WSPLC "is an agency of the state of Washington and is therefore not a

'person' susceptible to suit under § 1983." *Hanson v. Washington State Patrol*, No. 13-CV-0166-

TOR, 2013 WL 4518594, at *2 (E.D. Wash. Aug. 26, 2013) (citation omitted). Thus, defendant

WSPLC is an improper defendant.

Plaintiff seeks nominal and punitive damages from defendant WSPLC. Dkt. 7 at 22, 24.

"States, state agencies, and state officers sued in their official capacities are absolutely immune

from damage actions in federal court pursuant to the Eleventh Amendment, unless the state

consents to suit." *Lojas v. Washington*, No. CV-07-0140-JLQ, 2008 WL 1837337, at *7 (E.D.

Wash. Apr. 22, 2008). And the state of Washington has not waived this "immunity in the federal

1  courts." *Hanson*, 2013 WL 4518594, at *2 (citations omitted). So, whether against defendant

2  WSPLC or the state of Washington, the Eleventh Amendment would bar plaintiff's damages

3  claims.

4        D.    <u>Equal Protection</u>

5        "The Equal Protection Clause of the Fourteenth Amendment commands that no State

6  shall deny to any person within its jurisdiction the equal protection of the laws, which is

7  essentially a direction that all persons similarly situated should be treated alike." *City of*

8  *Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation and internal quotation

9  marks omitted). "To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection

10  Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an

11  intent or purpose to discriminate against the plaintiff based upon membership in a protected

12  class." *Furnace v. Sullivan*, 705 F.3d 1021, 1030 (9th Cir. 2013) (citation omitted).

13        Furthermore, "[w]here . . . state action does not implicate a fundamental right or a suspect

14  classification, the plaintiff can establish a 'class of one' equal protection claim by demonstrating

15  that it 'has been intentionally treated differently from others similarly situated and that there is

16  no rational basis for the difference in treatment.'" *Squaw Valley Dev. Co. v. Goldberg*, 375 F.3d

17  936, 944 (9th Cir. 2004) (quoting *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

18        Here, plaintiff alleges that defendants were biased against him and discriminated against

19  him based on his race and national origin. *See, e.g.*, Dkt. 7 at 11, 14, 18. However, plaintiff

20  alleges no facts suggesting that defendants engaged in the conduct at issue based on his race or

21  national origin. Furthermore, plaintiff has not alleged that defendants intentionally treated him

22  differently from similarly situated individuals and that there was no rational basis for the

23

24

1    different treatment. In short, because plaintiff's allegations of bias and discrimination are

2    conclusory, he has failed to state a facially plausible equal protection claim against defendants.

3          E.      First Amendment

4          Plaintiff alleges that defendants Dier, Ramos, and Muse violated the First Amendment.

5    *Id.* at 16. In support, he alleges that he is of "East African Bantu tradition" and that defendants

6    "should have known that people of different origins, traditions[,] and religions may observe

7    religiously-based nudity taboos." *Id.* at 18. The alleged religiously based nudity taboo appears to

8    be that plaintiff cannot be nude in front of women. *See id.* at 16–18. Therefore, plaintiff

9    concludes that these defendants violated his freedom to exercise his religion by collecting

10   evidence from him and photographing him while he was nude. *See id.* Plaintiff's allegations

11   compel the conclusion that he seeks damages based on this alleged First Amendment violation.

12   *See* Dkt. 7 at 18, 22–24.

13         Here, this Court has not found any cases holding that a one-time, nude, cross-gender

14   search pursuant to a "lawful task in evidence collection, Dkt. 7 at 17, but that the suspect's

15   religion forbids, violates the First Amendment. Indeed, the Ninth Circuit has indicated that the

16   Fourth Amendment or Eighth Amendment, depending on the plaintiff's custodial status, is the

17   proper vehicle for such a claim. *See Jordan v. Gardner*, 986 F.2d 1521, 1524 n.3 (9th Cir. 1993)

18   (en banc). So plaintiff has not adequately alleged that this conduct implicates the First

19   Amendment. This Court could liberally construe plaintiff's First Amendment damages claim as a

20   claim under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42

21   U.S.C. §§ 2000cc *et seq.* However, plaintiff's construed RLUIPA is not viable. *See Jones v.*

22   *Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) ("RLUIPA does not authorize suits for damages

23   against state officials in their individual capacities . . . ." (citation omitted)).

24

1     In summary, plaintiff has not properly alleged a First Amendment claim, and the

2     complaint cannot be amended to cure these problems.

3         F.      Fourth Amendment

4         "[C]ross-gender strip searches in the absence of an emergency violate [a pretrial

5     detainee's] right under the Fourth Amendment to be free from unreasonable searches." *See Byrd*

6     *v. Maricopa Cty. Sheriff's Dep't*, 629 F.3d 1135, 1137–38, 1146 (9th Cir. 2011) (en banc).

7         Here, plaintiff has adequately alleged that defendants Dier, Ramos, and Muse violated the

8     Fourth Amendment when they searched him. Plaintiff alleges that defendant Muse directed

9     defendant Ramos (a female) to take pictures of him and collect evidence from him while he was

10    nude and while defendant Dier (a female) watched. *See* Dkt. 7 at 16–17. Furthermore, plaintiff

11    alleges that these defendants forced him to assume several compromising positions "for their

12    personal enjoyment and fun." *Id.* at 17. Additionally, plaintiff alleges that male officials were

13    available to conduct the search. *See id.* at 16–17. Plaintiff's allegations plausibly suggest that

14    there was no emergency need for defendant Ramos to conduct the search or for defendant Dier to

15    observe it. And, at this stage, the record is not sufficiently developed to determine whether *Heck*

16    would apply to this claim. *See Heck*, 512 U.S. at 487 n.7. Therefore, based on the allegations in

17    count V, plaintiff has stated a facially plausible individual-capacity Fourth Amendment damages

18    claim against defendants Dier, Ramos, and Muse.

19        G.      Compelled Confession

20        Plaintiff alleges that the above search "compel[led] him to a confession." *See* Dkt. 7 at

21    17.

22        "No person . . . shall be compelled in any criminal case to be a witness against himself . .

23    . ." U.S. Const. amend. V. "[T]he Fifth Amendment provides a right against compelled self-

24

1   incrimination, but that right only applies when a compelled statement is used against a defendant

2   in a criminal case." *Chavez v. Robinson*, 12 F.4th 978, 989 (9th Cir. 2021) (citation and internal

3   quotation marks omitted). So only after a compelled incriminating statement is used in a criminal

4   proceeding has an accused suffered the requisite constitutional injury for purposes of a § 1983

5   action." *Id.* (alteration adopted) (citation and internal quotation marks omitted). In addition to at

6   trial, a "coerced statement has been 'used' in a criminal case when it has been relied upon to file

7   formal charges against the declarant, to determine judicially that the prosecution may proceed,

8   and to determine pretrial custody status." *Stoot v. City of Everett*, 582 F.3d 910, 925 (9th Cir.

9   2009).

10      Here, plaintiff has adequately alleged that defendants Dier, Ramos, and Muse violated his

11   Fifth Amendment rights. Plaintiff alleges that, while gratuitously subjecting him to a

12   compromising search, they "compel[led] him into a confession." *See* Dkt. 7 at 17.

13      "A person subjected to coercive interrogation techniques can bring a substantive due

14   process claim under the Fourteenth Amendment." *Tobias v. Arteaga*, 996 F.3d 571, 584 (9th Cir.

15   2021) (citations omitted). "The substantive due process standard requires showing that an officer

16   engaged in an abuse of power that shocks the conscience and violates the decencies of civilized

17   conduct." *Id.* (alteration adopted) (citation and internal quotation marks omitted). "The Supreme

18   Court has described police torture or other abuse as the type of claim cognizable under the

19   Fourteenth Amendment." *Id.* (citation omitted). "However, police conduct need not include

20   physical violence to violate substantive due process." *Id.* (citation and internal quotation marks

21   omitted). "*[P]sychological* coercion [may be] sufficient to state a ['shocks the conscience']

22   claim under the Fourteenth Amendment." *See Stoot*, 582 F.3d at 929 (citation omitted).

23

24

1    Here, plaintiff has adequately alleged that the alleged interrogation methods of

2    defendants Dier, Ramos, and Muse violated substantive due process. Again, plaintiff alleges that,

3    while they gratuitously subjected him to a compromising search, they compelled him to confess.

4    This Court recognizes that *Heck* and/or *Younger* may potentially bar plaintiff from

5    alleging that defendants violated the privilege against self-incrimination and substantive due

6    process. *See, e.g.*, *See Gilbertson*, 381 F.3d at 968 (holding that *Younger* may apply to damages

7    actions). . However, while *Heck* could potentially apply to this claim, the limited record before

8    this Court does not permit it to make such a determination at this time.

9    H.    Excessive Force

10    Plaintiff alleges that defendants Dier, Ramos, and Muse used excessive force on him

11    during the search at issue. Dkt. 7 at 18. From the complaint, it is unclear whether plaintiff was an

12    arrestee or a pretrial detainee at that time. His precise custodial status is immaterial here because,

13    in either case, this Court must consider whether these defendants acted in an objectively

14    reasonable manner in using force on plaintiff.

15    "*[A]ll* claims that law enforcement officers have used excessive force—deadly or not—in

16    the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed

17    under the Fourth Amendment and its 'reasonableness' standard[.]" *Graham v. Connor*, 490 U.S.

18    386, 395 (1989). Whether an officer's use of force is "reasonable" "requires careful attention to

19    the facts and circumstances of each particular case, including the severity of the crime at issue,

20    whether the suspect poses an immediate threat to the safety of the officers or others, and whether

21    he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396 (citation omitted).

22    Similarly, "courts must use an objective standard" when determining whether the

23    defendant has used excessive force on a pretrial detainee in violation of the Fourteenth

24

ORDER FOR AMENDED COMPLAINT - 17

1    Amendment's Due Process Clause. *See Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015).

2    As in the Fourth Amendment context, "objective reasonableness turns on the 'facts and

3    circumstances of each particular case.'" *Id.* at 397 (quoting *Graham*, 490 U.S. at 396).

4         Here, plaintiff has failed to allege facts to meet this minimum standard. Instead, plaintiff

5    broadly alleges, without describing any facts that would support such a claim, that defendants

6    Dier, Ramos, and Muse used excessive force on him during the search. Whether under the Fourth

7    Amendment or Due Process Clause, this conclusory allegation is insufficient to allow a claim to

8    go forward as drafted.

9         I.     Contamination

10        Plaintiff alleges, without any factual support, that defendants Dier, Ramos, and Muse

11   conducted their search in a contaminated room. Dkt. 7. at 17. This conclusory allegation fails to

12   state a facially plausible § 1983 claim. Also, to the extent plaintiff alleges that the prosecution's

13   DNA evidence was contaminated, it would call into question the validity of his conviction.

14   Therefore, *Heck* bars this allegation as explained above. *See supra* Part II(B). Therefore, plaintiff

15   should not include this claim in his amended complaint, as there is no basis upon which an

16   amended complaint could overcome these problems.

17        J.     Count VII

18        In count VII, plaintiff alleges that the "policies, customs[,] and norms" of defendant City

19   of Tacoma caused the alleged constitutional violations of defendants Dier, Ramos, and Muse.

20   *See* Dkt. 7 at 21.

21        "To prevail on a claim against a municipal entity for a constitutional violation, a plaintiff

22   must show that an official's action that caused the plaintiff's injury was pursuant to [an] official

23   municipal policy [or custom] of some nature." *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 793

24

1   (9th Cir. 2016) (en banc) (citation and internal quotation marks omitted). "Official municipal

2   policy includes the decisions of a government's lawmakers, the acts of its policymaking officials,

3   and practices so persistent and widespread as to practically have the force of law." *Connick v.*

4   *Thompson*, 563 U.S. 51, 61 (2011).

5          Here, plaintiff has adequately alleged that these defendants violated the Fourth, Fifth, and

6   Fourteenth Amendments during their cross-gender search. However, plaintiff has not adequately

7   alleged that defendant City of Tacoma had a municipal policy or custom that caused this alleged

8   constitutional violation. Rather, plaintiff simply alleges, without any factual support, that these

9   defendants so acted pursuant to defendant City of Tacoma's "policies, customs[,] and norms."

10  Dkt. 7 at 21. Such conclusory allegations fail to state a facially plausible § 1983 claim. If such a

11  policy exists, and plaintiff was able to sufficiently allege facts to support such a cause of action,

12  then plaintiff should identify this policy and allege sufficient facts to support this claim.

13      **III.    Conclusion**

14         Accordingly, this Court **ORDERS** as follows:

15         1.      On or before **December 27, 2021**, plaintiff must file an amended complaint that

16  cures, if possible, the deficiencies identified in this order.

17         2.      The amended complaint must be filed on this District's § 1983 form, legibly

18  written or retyped in its entirety, and filled out completely. Furthermore, the amended complaint

19  must contain case number 3:21-cv-05431-BJR-JRC. If plaintiff requires additional space to

20  allege his claims, he may submit no more than **five (5)** continuation sheets. Any continuation

21  sheet, whether handwritten or typewritten, must comply with this District's Local Rules

22  governing form of filings, including rules governing text size, margin size, and line spacing. *See*

23  Local Rule 10(d)–(e).

24

1   3.   The amended complaint will act as a complete substitute for the complaint; this

2   Court will address only the claims alleged in it. This Court recognizes that plaintiff has

3   sufficiently pleaded violations of the Fourth, Fifth, and Fourteenth Amendments, as discussed

4   above. *Supra* Parts III(F)–(G). However, because the amended complaint will act as a complete

5   substitute for the complaint, **plaintiff <u>must replead</u> these claims <u>and</u> the facts supporting**

6   **them in the amended complaint**. **If he does not, this Court will <u>not</u> permit him to proceed**

7   **on these claims**. Likewise, plaintiff must plead any other claims he wishes to assert and the facts

8   supporting them in the amended complaint.

9   4.   The amended complaint must not incorporate by reference any part of the

10   complaint. Likewise, the amended complaint must not incorporate arguments or text from any

11   other documents, including any exhibits. However, Plaintiff may, if he wishes, submit any

12   exhibit necessary to support the amended complaint's allegations.

13   5.   Plaintiff must not unjustifiably expand the scope of the case by alleging new

14   unrelated claims or parties in the amended complaint. *George v. Smith*, 507 F.3d 605, 607 (7th

15   Cir. 2007).

16   6.   If Plaintiff fails to timely file an amended complaint, or if he otherwise fails to

17   comply with this order, **this Court will dismiss this case or impose any appropriate sanction**

18   The Clerk is directed to **SEND** Plaintiff the appropriate forms for filing a § 1983 action

19   and a copy of this order. The motions to dismiss of the Tacoma defendants (Dkt. 29) and

20   defendant Peters (Dkt. 31) are **DENIED AS MOOT**.

21

22

23

24

Dated this 24th day of November, 2021.

J. Richard Creatura
Chief United States Magistrate Judge