UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

MICHAEL MUTHEE MUNYWE,

            Plaintiff,

   v.

SCOTT R. PETERS, *et al.*,

           Defendants.

CASE NO. 3:21-cv-05431-BJR-JRC

REPORT AND RECOMMENDATION

NOTED FOR: **February 11, 2022**

     The District Court has referred this action to United States Magistrate Judge J. Richard Creatura. The Court's authority for the referral is 28 U.S.C. § 636(b)(1)(A) and (B), and local Magistrate Judge Rules MJR3 and MJR4. Plaintiff filed this action under 42 U.S.C. § 1983.

     Plaintiff's original complaint alleged that: (1) certain defendants conspired to falsify evidence and suppress exculpatory DNA evidence; and (2) other defendants conducted a cross-gender search of him while he was nude. Because plaintiff's complaint, particularly the first allegation, was deficient, the Court ordered him amend it. Then, the Court ordered plaintiff to file a second amended complaint because the amended complaint contained the same

deficiencies and disregarded the order to amend. The second amended complaint is essentially the same as the amended complaint and, hence, equally deficient. So it should be dismissed in part. However, because plaintiff has adequately alleged certain constitutional violations in connection with the cross-gender search, he should be allowed to proceed on these claims.

## BACKGROUND

On November 21, 2018, plaintiff led a 15-year-old female, AG, "to an alleyway where he sat down on a ledge and pulled AG down to her knees close to him." *Washington v. Munywe*, No. 54681-7-II, 2022 WL 168111, at *1 (Wash. Ct. App. Jan. 19, 2022); *see Harris v. Cty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012) ("We may take judicial notice of . . . documents on file in federal or state courts." (citation omitted)).

Plaintiff "took out his penis and forced it into AG's mouth." *Id.* "AG eventually pushed [plaintiff] off her, got up, and began to walk away." *Id.* "As AG continued to walk, [plaintiff] grabbed her by the wrist again." *Id.* "AG then dialed 911 and pretended like she was speaking with her mother so [plaintiff] would not know she was calling 911." *Id.* "She told the operator to pick her up at the McDonald's." *Id.* "As [plaintiff] and AG walked toward McDonald's, Tacoma Police officer Jeffrey Thiry saw and detained [plaintiff], later arresting him." *Id.* "Thiry took [plaintiff] to police headquarters, where detective William Muse interviewed him." *Id.*

"The State charged [plaintiff] with first degree rape and first degree kidnapping." *Id.* "The jury convicted Munywe of second degree rape and unlawful imprisonment with sexual motivation." *Id.* at *2.

Plaintiff appealed his conviction. *See generally id.* On January 19, 2022, Division Two of the Court of Appeals of Washington ("Division Two") affirmed his "convictions and sentence." *Id.*

1 | Plaintiff's initial complaint was docketed on June 9, 2021. Dkt. 1. At that time, his direct appeal was pending but Division Two had yet to issue its opinion affirming his convictions. *See* Dkt. 52 at 3. To date, a mandate has yet to issue in connection with his direct appeal. *See* https://dw.courts.wa.gov/?fa=home.casesearch&terms=accept&flashform=0&tab=sup (searching Appellate Courts under Select Court Level, Search by name under Select Search Type, Court of Appeals Division II under Court Name, 01/01/2020 under Year Filed In/After, Michael Munywe under First Name and Last Name; clicking link for Case No. 546817). Therefore, Washington State's appeals process has yet to conclude. *See State v. Kilgore*, 167 Wash. 2d 28, 44 (2009) (en banc).

In his original complaint, plaintiff sued: (1) Scott R. Peters, a prosecutor; (2) Julie Dier, a detective; (3) Malerie Ramos, a crime scene technician; (4) William Muse, a detective; (5) the City of Tacoma; (6) Jennifer Hayden, a DNA analyst; and (7) Washington State Patrol Crime Laboratory ("WSPCL"). Dkt. 52 at 3.

The original complaint contained two main allegations: (1) certain defendants conspired to falsify evidence and suppress exculpatory DNA evidence in violation of his federal rights; and (2) other defendants violated his federal rights when they conducted a cross-gender search of plaintiff while he was nude. Plaintiff sought declaratory relief, injunctive relief, and damages. *Id.* at 1–2.

Certain defendants filed motions to dismiss. However, because the motions did not involve all defendants and all claims, the Court determined that a more appropriate way to address the issues was by screening the entire complaint pursuant to 28 U.S.C. § 1915A(a) and § 1915(e). *Id.* at 2.

Upon screening the complaint, the Court determined that it was "deficient in several respects." *Id.* at 1.

First, the Court determined that, regarding certain claims for injunctive and unspecified declaratory relief, an abstention was appropriate under *Younger v. Harris*, 401 U.S. 37 (1971). *Id.* at 8–11. The Court noted that plaintiff sought: (1) an investigation of defendant Peters and suspension of his law license; and (2) an order requiring the "destruction and nullification" of defendant Hayden's "DNA work product" and precluding her "DNA results" from use in plaintiff's future postconviction litigation. *Id.* at 10. The Court concluded that *Younger* required it to abstain from hearing these allegations given the pendency of plaintiff's direct criminal appeal. *See id.* at 8–11.

Second, the Court determined that the allegations in Counts I, II, III, IV, and VI, and their related requests for relief, were barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Id.* at 11–12. In so finding, the Court noted that the allegation that "defendants Peters and Hayden conspired to fabricate evidence and suppress exculpatory DNA evidence" underlay these counts. *Id.* at 11. The Court concluded that [e]stablishing these allegations would necessarily invalidate plaintiff's conviction." *Id.* (collecting cases).

Third, the Court found that plaintiff failed to adequately allege that defendants violated his right to equal protection. *Id.* at 13–14. The Court reasoned that plaintiff's allegations were too conclusory to support a reasonable inference that defendants "engaged in the conduct at issue based on his race or national origin" or "intentionally treated him differently from similarly situated individuals and that there was no rational basis for the different treatment." *Id.*

Fourth, the Court concluded that plaintiff's claim that defendants violated the First Amendment was not viable. *Id.* at 14–15. The Court reasoned that it found no cases holding that

"a one-time, nude, cross-gender search pursuant to a lawful task in evidence collection, but that the suspect's religion forbids, violates the First Amendment." *Id.* at 14. The Court further found that any claim under the Religious Land Use and Institutionalized Persons Act of 2000 ('RLUIPA') would not be viable because "RLUIPA does not authorize suits for damages against state officials in their individual capacities." *Id.* (citation and internal quotation marks omitted).

Fifth, the Court concluded that plaintiff had not adequately alleged that defendants used excessive force on him. *Id.* at 17–18. This was because he "broadly allege[d], without describing any facts that would support such a claim, that defendants Dier, Ramos, and Muse used excessive force on him during the search." *Id.* at 18.

Sixth, the Court concluded that plaintiff's conclusory allegations that defendants Dier, Ramos, and Muse conducted the search in a contaminated room "fail[ed] to state a facially plausible § 1983 claim." *Id.* The Court added that, "to the extent plaintiff allege[d] that the prosecution's DNA evidence was contaminated, [this allegation] would call into question the validity of his conviction" and was thus *Heck*-barred. *Id.*

Seventh, the Court found that defendant WSPLC was not a proper defendant in a § 1983 action. *Id.* at 12. The Court further found that defendant WSPLC, as a state agency, was immune from damages under the Eleventh Amendment. *Id.* at 12–13.

By contrast, the Court determined that plaintiff had adequately alleged that defendants violated the Fourth, Fifth, and Fourteenth Amendments. *Id.* at 15–17.

To support the Fourth Amendment claim, plaintiff alleged that "defendant Muse directed defendant Ramos (a female) to take pictures of him and collect evidence from him while he was nude and while defendant Dier (a female) watched." *Id.* at 15. Plaintiff further alleged that "male officials were available to conduct the search." *Id.* Therefore, the Court concluded that his

REPORT AND RECOMMENDATION - 5

"allegations plausibly suggest[e]d that there was no emergency need for defendant Ramos to conduct the search or for defendant Dier to observe it." *Id.* Accordingly, the Court concluded that plaintiff adequately alleged that he was subjected to a cross-gender search in the absence of an emergency in violation of his right to be free from unreasonable searches. *Id.* (citation omitted).

Regarding the Fifth and Fourteenth Amendment claims, plaintiff alleged that defendants compelled him to confess. *Id.* In support, plaintiff alleged that defendants Dier, Ramos, and Muse compelled him to confess while subjecting him to a search in which they forced him to assume several compromising positions for their personal enjoyment and fun. *See id.* at 15–16. The Court concluded that this allegation supported a reasonable inference that defendants violated plaintiff's Fifth Amendment privilege against self-incrimination. *See id.* Further, the Court concluded that plaintiff had sufficiently stated that these allegedly coercive interrogation techniques violated substantive due process. *Id.* at 16–17.

Plaintiff has filed a related case in this District. *Munywe v. Dier et al.*, 3:21-cv-05218-BJR-JRC ("*Munywe I*"). The parties' respective motions for summary judgment are pending in that case. *Id.*, Dkts. 23, 34. To support their motion for summary judgment, defendants filed a video of plaintiff's interview by defendants Muse and Dier and the subsequent evidence collection procedure involving another female, presumably defendant Ramos. *See id.*, Dkt. 37.

The undersigned has viewed the entire video in connection with reviewing the parties' motions for summary judgment in *Munywe I*. At this stage, the undersigned declines to take judicial notice of the video *sua sponte*. *See Turner v. Byer*, No. 2:17-CV-1869-EFB P, 2020 WL 5518401, at *2 (E.D. Cal. Sept. 14, 2020) (declining to take judicial notice of a video to "weigh its contents and determine whether excessive force occurred"), *report and recommendation adopted*, 2020 WL 6582267. However, the undersigned notes that the video appears to "blatantly

contradict[]" plaintiff's allegation that defendants Dier, Ramos, and Muse compelled him to confess while subjecting him to a search in which they forced him to assume several compromising positions for their personal enjoyment and fun. *See Scott v. Harris*, 550 U.S. 372, 380 (2007).

In its order to amend, the Court directed plaintiff to file an amended complaint that cured, if possible, the complaint's deficiencies. Dkt. 52 at 19. Further, the Court ordered plaintiff to file the amended complaint on this District's form for § 1983 actions. *Id.* To help plaintiff focus his deficient allegations, the order provided that he could submit no more than five continuation sheets if he required additional space to allege his claims. *Id.* The order also provided that plaintiff must not "unjustifiably expand the scope of the case by alleging new[,] unrelated claims or parties in the amended complaint." *Id.* at 20 (citation and internal quotation marks omitted). Additionally, the order to amend cautioned plaintiff that the Court would dismiss the case or impose any appropriate sanction if he failed to comply with it. *Id.*

Plaintiff timely filed an amended complaint. Dkt. 53. However, the amended complaint did not comply with the Court's order to amend. For one, although plaintiff filed the amended complaint on the § 1983 form, he submitted nineteen continuation sheets. Dkt. 54 at 1–2.

Furthermore, plaintiff alleged a new ground for relief. *Id.* at 2. Plaintiff alleged that defendant Peters ordered him to be handcuffed and taken to "an ice box and . . . restrained in [a] cement block" to compel him to allow "a doctor to draw blood from [him]." Dkt. 53 at 8–9. Plaintiff asserted this new claim against new defendants Mary Robnett, Pierce County Prosecutor's Office ("Prosecutor's Office"), and Pierce County. *Id.* at 11–12.

Additionally, plaintiff repeated one of the complaint's main allegations, namely, that "certain defendants conspired to falsify evidence and suppress exculpatory DNA evidence." Dkt.

52 at 1; *see also* Dkt. 53 at 14–22. Likewise, plaintiff repleaded his allegations that certain defendants violated the First Amendment and RLUIPA by "collecting evidence from him and photographing him while he was nude [in the presence of women]." Dkt. 52 at 14; *see also* Dkt. 53 at 24–26. And plaintiff again sought injunctive and declaratory relief that the Court could not grant here. Dkt. 54 at 2 (citing Dkt. 52 at 10–12; Dkt. 53 at 27–30).

Accordingly, the Court ordered plaintiff to file a second amended complaint that cured these deficiencies. *Id.* at 3. The Court again required plaintiff to file the second amended complaint on the § 1983 form and to submit no more than five continuation sheets. *Id.* Furthermore, the Court again directed plaintiff not to unjustifiably expand the scope of the case by alleging new, unrelated claims or parties. *Id.* at 2. The undersigned cautioned plaintiff that, if he failed to comply with this order, the undersigned would recommend dismissal of the case. *Id.*

Plaintiff timely filed a second amended complaint. Dkt. 56. The second amended complaint names the following defendants: (1) Peters; (2) Mary Robnett, supervisory prosecutor; (3) Prosecutor's Office; (4) Pierce County; (5) Hayden; (6) Dier; (7) Muse; (8) Ramos; (9) City of Tacoma; and (10) Tacoma Police Department ("Department"). *Id.* at 5–6.

The second amended complaint is essentially the same as the amended complaint. In Count I, plaintiff again alleges that defendant Peters orchestrated his mistreatment while he was in pretrial detention at the Pierce County Jail. *Id.* at 7–13. For instance, defendant Peters allegedly ordered that plaintiff be kept in a freezing-cold cell to coerce him to allow a jail doctor to draw his blood. *See id.* at 9–10. Plaintiff also alleges this claim against defendants Robnett, Prosecutor's Office, and Pierce County based on general allegations of supervisory and municipal liability. *See id.* at 11–13.

1    In Counts II and III, plaintiff alleges violations of due process, equal protection, and his right to a speedy trial. *Id.* at 14. In support, he repeats the allegation that defendants Peters, Hayden, and Prosecutor's Office (and certain nondefendants) conspired to falsify evidence and to suppress and "spoliate" exculpatory DNA and other evidence. *Id.* at 14–19.

In Count IV, plaintiff realleges that defendants Dier, Ramos, and Muse subjected him to a compromising search while he was nude. *Id.* at 20–24. Based on this search, plaintiff again asserts violations of the First, Fourth, Fifth, and Fourteenth Amendments, along with RLUIPA. *Id.* Plaintiff also asserts this claim against defendants Department and City of Tacoma based on allegations of municipal liability. *Id.* at 24.

In his prayer for relief, plaintiff again seeks damages, unspecified declaratory, and sweeping injunctive relief. *Id.* at 26–29.

## DISCUSSION

### I.     Count I

Count I should be dismissed as a sanction for failing to comply with court orders.

"District courts have inherent power to control their dockets." *Thompson v. Hous. Auth. of City of Los Angeles*, 782 F.2d 829, 831 (9th Cir. 1986) (per curiam). "In the exercise of that power they may impose sanctions including, where appropriate, default or dismissal." *Id.* Under this inherent power, "sanctions are available if the court specifically finds bad faith or conduct tantamount to bad faith." *Fink v. Gomez*, 239 F.3d 989, 994 (9th Cir. 2001). Thus, "[s]anctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose." *Id.*

Here, plaintiff's failure to comply with the Court's orders shows bad faith or conduct tantamount thereto. The Court instructed plaintiff not to submit more than five continuation

sheets in both orders to amend. However, plaintiff disregarded these orders by submitting, respectively, nineteen and seventeen continuation sheets. Furthermore, plaintiff did not ask for permission to file additional continuation sheets or otherwise attempt to justify his failure to comply with this requirement. Moreover, the record does not reflect that plaintiff needed this many continuation sheets to articulate his claims. Again, and as discussed further below, many of the allegations in the second amended complaint remain deficient. And, in its orders to amend, the Court gave plaintiff clear notice of these deficiencies. *See Hardeman v. Monsanto Co.*, 833 F. App'x 92, 93–94 (9th Cir. 2020) ("[I]t is permissible to infer bad faith from a violation of an order plus the surrounding circumstances[.]" (citation and internal quotation marks omitted)).

Furthermore, plaintiff twice raised the new, unrelated claim that defendant Peters orchestrated his mistreatment while in pretrial detention at the Pierce County Jail, which he asserted against new defendants Mary Robnett, Prosecutor's Office, and Pierce County. These new allegations lack an adequate factual "connection" to the "factual background" underlying plaintiff's allegations in the complaint. *See Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). In the complaint, plaintiff generally alleged that: (1) defendants Peters and Hayden conspired to fabricate evidence and suppress exculpatory DNA evidence; and (2) defendants Muse, Ramos, and Dier unlawfully conducted a cross-gender search. *See* Dkt. 52 at 3–5. In the second amended complaint, by contrast, plaintiff alleges that defendant Peters—and certain new defendants—subjected him to unlawful conditions of confinement at the Pierce County Jail. There is no meaningful factual connection between these new allegations and those in the complaint. Moreover, plaintiff cannot contend that he did not understand this to be the case because, in its order for a second amended complaint, the Court informed him that these new allegations were unrelated to those in his complaint. Dkt. 54 at 2.

In sum, plaintiff has disregarded the Court's orders to amend, thus needlessly delaying these proceedings and creating extra work for the Court. As a sanction, Count I of the second amended complaint should be dismissed without prejudice but without leave to amend.

Dismissal of just Count I is a "less drastic sanction[]" than dismissing the entire case. *See Thompson*, 782 F.2d at 831 (citation omitted). Likewise, dismissal of Count I without prejudice "is a less drastic sanction than with prejudice." *See Davis v. McDonnell*, No. CV 15-4057-JGB (JPR), 2015 WL 10793491 (C.D. Cal. Aug. 11, 2015), *report and recommendation adopted*, 2015 WL 10793691 (C.D. Cal. Sept. 30, 2015). The undersigned recommends this result instead of dismissal of the entire case. The allegations underlying plaintiff's facially plausible claims date to November 2018. Therefore, dismissal of the entire case, even without prejudice, may cause any future action to be untimely and thus have the effect of a dismissal with prejudice. *See In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1228 (9th Cir. 2006) ("The district court abuses its discretion if it imposes a sanction of dismissal without first considering the impact of the sanction . . . ." (citation and internal quotation marks omitted)). Despite plaintiff's disregard of the Court's orders to amend, this outcome would be too harsh in these circumstances.

## II.  Counts II and III

In Counts II and III, plaintiff alleges violations of due process, equal protection, and his right to a speedy trial. Dkt. 56 at 14. In support, he repeats the allegation that defendants Peters, Hayden, and Prosecutor's Office (and certain nondefendants) conspired to falsify evidence and to suppress and "spoliate" exculpatory DNA and other evidence. *Id.* at 14–19. These claims and the related requests for relief (including damages) should be dismissed because they call into question the validity of an underlying conviction and are, therefore, are *Heck*-barred for the

reasons in the Court's order to amend. *See supra* p. 4; *see also Whitaker v. Garcetti*, 486 F.3d 572, 583 (9th Cir. 2007) ("The Supreme Court later clarified that *Heck*'s principle applies regardless of the form of remedy sought."). Likewise, because plaintiff's direct appeals process is ongoing, these claims and the related requests for declaratory and injunctive relief should be dismissed pursuant to *Younger* for the reasons in the Court's order to amend. *See supra* p. 4.

### III. Count IV

In Count IV, plaintiff realleges that defendants Dier, Ramos, and Muse subjected him to a compromising search while he was nude. Dkt. 56 at 20–24. Based on this search, plaintiff again asserts violations of the First, Fourth, Fifth, and Fourteenth Amendments, along with RLUIPA. *Id.* Plaintiff also asserts this claim against the Department and City of Tacoma based on allegations of municipal liability. *Id.* at 24.

Plaintiff should be allowed to proceed on his Fourth, Fifth, and Fourteenth Amendment damages claims for the reasons in the Court's order to amend. *See supra* pp. 5–6. However, for the reasons in the Court's order to amend, plaintiff's First Amendment and RLUIPA claims should be dismissed with prejudice. *See supra* pp. 4–5.

### IV. Dismissal of Defendants

Based on the above recommendations, defendants Robnett, Prosecutor's Office, and Pierce County should be dismissed. Plaintiff alleges Count I against these defendants and the undersigned has recommended that Count I be dismissed.

Defendants Peters and Hayden should also be dismissed. Plaintiff alleges Counts I, II, and III against defendant Peters and Counts II and III against defendant Hayden. However, the undersigned has recommended that these Counts be dismissed.

In Count IV, plaintiff sues defendants Dier, Ramos, Muse, City of Tacoma, and the Department. The Department should be dismissed because it is not a proper defendant in a § 1983 action. Johnson v. United States, No. C21-5225 RJB, 2021 WL 3109767, at *3 (W.D. Wash. July 22, 2021).

By contrast, the City of Tacoma may be sued under § 1983. *Id.* "To prevail on a claim against a municipal entity for a constitutional violation, a plaintiff must show that an official's action that caused the plaintiff's injury was pursuant to [an] official municipal policy [or custom] of some nature." *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 793 (9th Cir. 2016) (en banc) (citation and internal quotation marks omitted). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

Here, plaintiff alleges that defendant City of Tacoma had a policy and/or custom that "emboldened" defendants Muse, Dier, and Ramos to conduct their cross-gender search. Dkt. 56 at 24. Therefore, he has adequately alleged that this purported policy and/or custom caused these defendants to violate the Fourth Amendment in conducting the cross-gender search. *See* Dkt. 52 at 6–7 (stating screening standard of review).

However, plaintiff's allegations regarding defendant City of Tacoma do not sufficiently relate to plaintiff's Fifth and Fourteenth Amendment claims against defendants Muse, Dier, and Ramos. That is, plaintiff has not adequately alleged that the City of Tacoma had a policy and/or custom that caused these defendants to violate his privilege against self-incrimination or engage in behavior that shocked the conscience. *See* Dkt. 52 at 6–7. Plaintiff based his Fifth and Fourteenth Amendment claims on more than the allegation that defendants Muse, Dier, and

Ramos conducted a cross-gender search. Rather, he alleged that they compelled him to confess while subjecting him to a search in which they forced him to assume several compromising positions for their personal enjoyment and fun. Plaintiff's allegations regarding defendant City of Tacoma do not support a reasonable inference that it had a policy and/or custom that caused these alleged constitutional violations. *See* Dkt. 52 at 6–7. Thus, plaintiff has not stated a facially plausible claim under the Fifth or Fourteenth Amendment against defendant City of Tacoma. These claims of municipal liability should be dismissed without prejudice but without leave to amend.

## CONCLUSION

As discussed above, it is **RECOMMENDED** as follows:

(1) The second amended complaint (Dkt. 56) should be **allowed to proceed in part and dismissed in part**.

(2) Plaintiff should be **allowed to proceed** on his Fourth, Fifth, and Fourteenth Amendment claims for damages in Count IV against defendants Muse, Dier, Ramos.

(3) Plaintiff should be **allowed to proceed** on his Fourth Amendment claim for damages in Count IV against defendant City of Tacoma.

(4) Plaintiff's Fifth and Fourteenth Amendment claims for damages in Count IV against defendant City of Tacoma should be **dismissed without prejudice but without leave to amend**.

(5) Plaintiff's claims in Count I should be **dismissed without prejudice but without leave to amend** as a sanction for failure to comply with court orders.

(6) Plaintiff's claims in Counts II and III should be **dismissed without prejudice but without leave to amend** pursuant to *Heck* and *Younger*.

(7) Plaintiff's First Amendment and RLUIPA claims should be **dismissed with prejudice**.

(8) Defendants Peters, Hayden, Robnett, Pierce County Prosecutor's Office, Pierce County, and Tacoma Police Department should be **terminated** as parties.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from service of this Report to file written objections. *See also* Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of *de novo* review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140, 142 (1985); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **February 11, 2022** as noted in the caption.

Dated this 24th day of January, 2022.

J. Richard Creatura
Chief United States Magistrate Judge